## United States District Court
## Southern District of Texas

| | | |
|---|---|---|
| Diamond Services Corporation, | § | Civil Action No. 4:22-cv-02117 |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| Curtin Maritime Corp.; Dep't of | § | |
| Homeland Security; National | § | |
| Vessel Documentation Center; | § | |
| U.S. Coast Guard; United States | § | |
| of America; Commandant, | § | |
| United States Coast Guard | § | |
| Linda L. Fagan; and Port of | § | |
| Houston Authority, | § | |
| *Defendants.* | § | |

---

## Defendant Port of Houston Authority's
## Motion to Dismiss under Rule 12(b)

---

AHMAD, ZAVITSANOS & MENSING, P.C.

Todd W. Mensing, Attorney in Charge
Sammy Ford IV
Kelsi S. White
Michael A. Killingsworth
1221 McKinney St., Ste. 2500
Houston, TX 77010
Phone: 713-655-1101
Fax: 713-655-0062

**Counsel for Port Houston**

i

# Table of Contents

I. Statement of Issues to be Ruled Upon by the Court..........................1

II. Factual and Procedural Background....................................................1

III. Summary of the Argument....................................................................4

IV. Argument and Authorities .....................................................................6

   A. Port Houston is entitled to dismissal under Rule 12(b)(1) because of a lack of standing and state sovereign immunity. ............................6

      1. Diamond Services lacks standing against Port Houston because it did not bid for the Houston Ship Channel expansion project and thus suffered no injury...................................................................7

      2. Port Houston is entitled to state sovereign immunity. ...........11

   B. Under Rule 12(b)(6), Diamond Services alleged no cause of action against Port Houston and has not pled administrative exhaustion or improper agency action........................................................................12

      1. Diamond Services alleges no plausible claims against Port Houston. ...................................................................................13

      2. Diamond Services does not allege a plausible, exhausted claim of improper agency action to overcome the deference to which the Coast Guard is entitled. ...............................................................14

V. Conclusion..........................................................................................16

# Table of Authorities

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................... 12, 15

*Barcenas v. Federal Home Loan Mortg. Corp.,*
  No. H-12-2466, 2013 WL 286250 (S.D. Tex. Jan. 24, 2013) ............... 13

*Cantu Services, Inc. v. Roberie,*
  535 F. App'x 342 (5th Cir. 2013) ........................................................ 6

*Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.,*
  467 U.S. 837 (1984) .......................................................................... 16

*Daves v. Dallas County, Tex.,*
  2 F.4th 522 (5th Cir. 2022) ........................................................... 4, 10

*Denman v. Wells Fargo Bank,*
  No. SA-13-CV-11-XR, 2013 WL 1866580 (W.D. Tex. May 2, 2013) .... 13

*Doe v. Duncanville ISD,*
  70 F.3d 402 (5th Cir. 1995) ................................................................ 8

*Harris Cty. Texas v. MERSCORP Inc.,*
  791 F.3d 545 (5th Cir. 2015) ............................................................. 13

*Heckler v. Ringer,*
  466 U.S. 602 (1984) .......................................................................... 15

*Hotze v. Burwell,*
  784 F.3d 984 (5th Cir. 2015) .............................................................. 7

*Kamani v. Port of Houston Authority,*
  702 F.2d 612 (5th Cir. 1983) ............................................................. 11

*Little v. KPMG LLP,*
  575 F.3d 533 (5th Cir. 2009) ............................................................. 10

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .......................................................................... 11

*Morgan v. City of Alvin,*
    175 S.W.3d 408 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ......... 11

*Paterson v. Weinberger,*
    644 F.2d 521 (5th Cir. 1981) .............................................................. 6

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) .......................................................... 5, 6

*Ray Baillie Trash Hauling, Inc. v. Kleppe,*
    477 F.2d 696 (5th Cir. 1973) .......................................................... 8, 9

*Shipbuilders Council of Am. v. United States Dep't of Homeland Sec.,*
    770 F. Supp. 2d 793 (E.D. Va. 2011) .................................................. 16

*Southwestern Bell Telephone Co. v. City of El Paso,*
    243 F.3d 936 (5th Cir. 2001) .............................................................. 12

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................. 7, 8, 10

*Stratta v. Roe,*
    961 F.3d 340 (5th Cir. 2020) .............................................................. 12

*Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n,*
    No. CV 4:16-1250, 2016 WL 3855865 (S.D. Tex. July 15, 2016) ......... 13

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) .............................................................. 7

## Statutes & Regulations

28 U.S.C. § 1361 ...................................................................... 19

46 C.F.R. 67.177 ...................................................................... 21

46 U.S.C. § 12101(a) ................................................................ 20

46 U.S.C. § 12112 .................................................................... 7

46 U.S.C. § 55109 .................................................................... 7

5 U.S.C. § 702 ........................................................................ 19

5 U.S.C. § 704 ........................................................................ 20

5 U.S.C. § 706(2)(A) .................................................................. 20

TEX. CIV. PRAC. & REM. CODE §§ 101.021 ............................... 16

TEX. CIV. PRAC. & REM. CODE §§ 101.0215 ............................. 16

TEX. CIV. PRAC. & REM. CODE §§ 101.022 ............................... 16

**Rules**

FED. R. CIV. P. 12(b)(1) ........................................................ 8, 10

FED. R. CIV. P. 12(b)(6) ........................................................... 9

## I.      Statement of Issues to be Ruled Upon by the Court

The Court should dismiss the complaint for four independent reasons:

1. Diamond Services did not participate in bidding for the at-issue project, so it suffered no injury and lacks standing. FED. R. CIV. P. 12(b)(1).
2. Port Houston has state sovereign immunity, barring this suit. FED. R. CIV. P. 12(b)(1).
3. Diamond Services has no viable cause of action against Port Houston. FED. R. CIV. P. 12(b)(6).
4. Diamond Services fails to allege a plausible, exhausted claim of improper agency action by the Coast Guard Defendants. FED. R. CIV. P. 12(b)(6).

## II.      Factual and Procedural Background

This is a suit in which a dredging company wants to challenge the federal government's approval of a vessel that its competitor uses.

Diamond Services seeks "declaratory and injunctive relief" against its competitor, Defendant Curtin Maritime, and governmental defendants, including the Coast Guard Defendants[1] and Port Houston. Diamond Services claims that Curtin Maritime is using a dredging ship,

---

[1]      The Coast Guard Defendants are the United States of America, the National Vessel Documentation Center, the U.S. Coast Guard, the Commandant of the U.S. Coast Guard (Linda L. Fagan), and the U.S. Department of Homeland Security. Dkt. 1, at 6.

1

the *DB Avalon*, which, in Diamond Services' opinion, violates federal regulations, even though the Coast Guard Defendants decided otherwise.[2] Dkt. 1.

Specifically, Diamond Services claims that the *DB Avalon* violates federal law requiring vessels dredging in United States waters to be built and rebuilt in the United States. 46 U.S.C. § 55109 (the Foreign Dredge Act); 46 U.S.C. § 12112 (requiring that dredging ships obtain coastwise endorsement from Coast Guard, which requires that vessel be built in United States). According to Diamond Services, the *DB Avalon* was not built or rebuilt in the United States because the vessel's crane and spuds were originally built in Japan, which Curtin Maritime bought and rebuilt onto the *DB Avalon* in the United States. Dkt. 1, at 7-14. The Coast Guard Defendants, however, have decided that the *DB Avalon* does qualify as rebuilt in the United States even if it has a Japanese-built crane and spuds. Dkt. 1, at 8-9, 12-14. As a result, Diamond Services claims that the Coast Guard Defendants have violated federal law.

---

[2]     In technical language, the National Vessel Documentation Center has issued a preliminary rebuild determination that the *DB Avalon* will qualify as rebuilt in the United States, making it compliant with federal law and entitled to a certificate of documentation with a coastwide endorsement. Dkt. 1, at 8-9, 12-14.

As for Port Houston, Diamond Services alleges that Port Houston solicited bids for a project to expand the Houston Ship Channel, a project that it eventually awarded to Curtin Maritime and another company, Weeks Marine. Dkt. 1, at 14 ¶ 64. Diamond Services alleges that Curtin Maritime intends to use the *DB Avalon* for this project. Further, Diamond Services alleges that it "was a subcontractor on bids for this same Houston Ship Channel dredge." Dkt. 1, at ¶ 6; *see also id.* at ¶ 47. Based solely on these allegations, Diamond Services seeks an injunction that precludes Port Houston from "awarding any funds or work to Curtin Maritime for the use of the dredge *Avalon.*" Dkt. 1, at 16, ¶ E.

Despite these allegations, Port Houston received no bid from Diamond Services for the Houston Ship Channel expansion project, and Diamond Services was not included as a sub-contractor on the six bids that were submitted for the project from other companies. Ex. A, ¶ 5.

Port Houston accepted service based on Diamond Services' agreement that Port Houston could file its responsive pleading under Rule 12 by August 26, 2022, making this motion timely.

### III.   Summary of the Argument

*First*, the Court lacks subject matter jurisdiction because Diamond Services lacks standing vis-à-vis Port Houston. FED. R. CIV. P. 12(b)(1). Diamond Services lacks standing based on the evidence Port Houston submits with this motion, which defeats subject matter jurisdiction. Diamond Services complains about a contract that Port Houston awarded to Curtin Maritime for the Houston Ship Channel expansion project, but Diamond Services did not submit a bid proposal for that project. Ex. A, ¶ 5. Thus, any injury Diamond Services suffered was not because of Port Houston's conduct, but because of Diamond Services' own failure to participate in bidding. And Diamond Services' theory that it suffered some theoretical competitive harm because of Curtin Maritime's use of the *DB Avalon* cannot establish standing against Port Houston, as opposed to other defendants. *See Daves v. Dallas County, Tex.*, 2 F.4th 522, 542 (5th Cir. 2022) ("Standing to sue one defendant does not, on its own, confer standing to sue a different defendant.").

Alternatively, this Court does not have subject matter jurisdiction because the Fifth Circuit has previously held that Port Houston is

entitled to state sovereign immunity in an admiralty case, and that precedent has never been overruled.

**Second**, Diamond Services has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Diamond Services describes no cause of action against Port Houston, only the remedy of an injunction. Diamond Services' complaint begs the question: an injunction for what? Diamond Services alleges no wrongdoing or legally cognizable tort or statutory claim against Port Houston. No amendment can cure this defect because Port Houston had nothing to do with the Coast Guard Defendants' approval of the *DB Avalon* or Curtin Maritime's decision to use that vessel for work. Relatedly, Diamond Services has failed to allege facts that support a plausible, exhausted claim that the Coast Guard Defendants made an arbitrary and capricious decision here.

In summary, Port Houston is an improper defendant that has no stake in this fight. Port Houston cannot second-guess the Coast Guard Defendants' authority to certify vessels (which it reasonably exercised here) and cannot award contracts to companies that do not submit bids.

## IV.   Argument and Authorities

When motions assert arguments under both Rules 12(b)(1) and (6), the Court considers the Rule 12(b)(1) jurisdictional arguments first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## A.   Port Houston is entitled to dismissal under Rule 12(b)(1) because of a lack of standing and state sovereign immunity.

For dismissal under Rule 12(b)(1), the Court can consider the complaint and factual evidence, if the movant makes a factual attack. *Ramming*, 281 F.3d at 161; *see also Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (movant can make factual attack on jurisdiction by offering evidence).  The Court is empowered to resolve any disputed facts based on the evidence. *Id.* The burden of proof is on the party asserting jurisdiction, here the Plaintiff Diamond Services. *Id.*

There is no subject matter jurisdiction because Diamond Services lacks standing based on evidence offered by Port Houston. *Paterson*, 644 F.2d at 523 (standing falls under Rule 12(b)(1) and can involve a facial or factual attack).  Alternatively, Port Houston has state sovereign immunity, barring this suit. *See Cantu Services, Inc. v. Roberie*, 535 F. App'x 342, 344, 346 n.3 (5th Cir. 2013) (unpublished) (analyzing sovereign immunity as jurisdictional).

### 1. Diamond Services lacks standing against Port Houston because it did not bid for the Houston Ship Channel expansion project and thus suffered no injury.

Port Houston is entitled to dismissal under Rule 12(b)(1) because Diamond Services lacks standing, eliminating subject matter jurisdiction. *Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015) (standing is an element of Article III jurisdiction).

Standing requires a plaintiff to have suffered 1) an "injury in fact," 2) that was caused by the defendant, and 3) that the requested relief will redress. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998). An "injury in fact" must be a "concrete and actual or imminent, not conjectural or hypothetical" harm. *Id.* at 103 (internal quotations omitted).

Port Houston makes a factual, rather than facial, attack on Diamond Services' standing by offering evidence that demonstrates the lack of standing. *Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. 1981). According to the Port employee that issued the bid solicitation for the Houston Ship Channel expansion project and received the six submitted bid proposals, Diamond Services did not make a bid for the

7

Ship Channel expansion project and was not a sub-contractor on any of the six bids that Port Houston did receive. Ex. A, ¶¶ 2-5.

Because Diamond Services did not participate in bidding for the Houston Ship Channel expansion project, it could not have suffered injury in fact that was caused by Port Houston and that this Court can redress. *Steel Co.*, 523 U.S. at 102-04. Diamond Services did not lose out on the project because Port Houston awarded it to Curtin Maritime and Weeks Marine; Diamond Services lost out on the project because it never submitted a bid proposal in the first place. Diamond Services had to do so in order to be eligible for the contract award. Ex. A, ¶ 5. Indeed, if Diamond Services thought something about the bidding process was unfair, it could have filed a vendor protest under Port Houston's vendor-protest procedures. Ex. A, ¶ 6, Ex. 2. It did not. Ex. A, ¶ 7.

Even if this Court were to agree with Diamond Services' interpretation of federal regulations (in disagreement with the Coast Guard Defendants), the Court cannot award Diamond Services a contract that it never submitted a bid for. *See Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 709-710 (5th Cir. 1973); Ex. A, ¶ 5 (companies must submit bid proposals to potentially receive contract work); *Doe v.*

8

*Duncanville ISD*, 70 F.3d 402, 408 (5th Cir. 1995) (plaintiff lacked standing for claim based on distribution of Gideon bibles because student was never in grade that distributed the bibles and also lacked taxpayer standing).

In *Ray Baillie Trash Hauling*, the plaintiffs sued the Small Business Administration (SBA), claiming that its special program for small businesses owned by "disadvantaged persons" was racially discriminatory. The Fifth Circuit held that the plaintiffs had standing to challenge the SBA's statutory and constitutional authority to establish the program in the first place, but did not have standing to challenge how the program was administered or had benefitted a particular competitor. 477 F.2d at 701, 709-10. The plaintiffs lacked standing on the latter claim because they "had never applied for participation in the section 8(a) program" or contended they were eligible for it. *Id.* at 710. Thus, the Court concluded that, "whatever the outcome of the litigation, the plaintiffs will not be directly affected." *Id.*

The same reasoning and result follow here. Because Diamond Services did not submit a bid for the Houston Ship Channel expansion project, it is not eligible for and cannot receive the contract for that

project—even if this Court hypothetically decided that Curtin Maritime could not receive the winning bid either. "[W]hatever the outcome of the litigation, [Diamond Services] will not be directly affected." *Id.* at 710.

Moreover, Diamond Services cannot establish standing *against Port Houston* by theorizing that *Curtin Maritime's* use of the *DB Avalon* has somehow impacted competition and taken business from Diamond Services. *See Daves*, 2 F.4th at 542 ("Standing to sue one defendant does not, on its own, confer standing to sue a different defendant."). Even if alleged lost-business injuries were not inherently too speculative (they are),[3] such injuries are not *caused by* Port Houston's conduct. *Steel Co.*, 523 U.S. at 103. Port Houston did not certify the *DB Avalon* under federal regulations (the Coast Guard Defendants did). Dkt. 1, at 12-14. Port Houston did not submit bid proposals based on allegedly reduced costs

---

[3]    These alleged "lost business" injuries are too speculative to establish standing under this Court's precedent. In *Little v. KPMG LLP*, this Court held that competitors lacked standing to sue KPMG for material misrepresentations about its licensure status in Texas when one of its partners was inadvertently not licensed in Texas. 575 F.3d 533 (5th Cir. 2009). The competitors' claims required multiple levels of "speculation"—that the clients would have sought to replace KPMG, would have replaced KPMG with one or more of the competitors, and then would have paid the competitors what they paid KPMG. 575 F.3d at 540-41. Diamond Services' lost-business theory requires the same speculative analytical leaps.

from use of that vessel (Curtin Maritime did). Dkt. 1, at 2, 15. Diamond Services has not alleged any differently.

Because third parties caused any lost-business injuries, not Port Houston, Diamond Services cannot establish standing against Port Houston. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that injury must be fairly traceable to the defendant, not the result of independent actions of third parties).

### 2. Port Houston is entitled to state sovereign immunity.

The above analysis on standing is clear-cut and resolves this Motion in its entirety, which means this Court does not need to address Port Houston's state sovereign immunity, a more complex question. That said, in *Kamani v. Port of Houston Authority*, this Court held that Port Houston was entitled to state sovereign immunity in an admiralty case. 702 F.2d 612, 613 (5th Cir. 1983). Thus, the only claims permissible against Port Houston are those the Texas legislature has waived in the Texas Tort Claims Act, which does not cover the bare declaratory or injunctive relief asserted here. *Kamani*, 702 F.3d at 613-14; *see generally* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.0215, 101.022.[4]

---

[4]      Instead, the Texas Tort Claims Act generally waives immunity for negligence torts in three areas, none of which apply here: (1) injuries caused by motor vehicles

Although two panels have criticized *Kamani*, the Fifth Circuit has never taken the holding in *Kamani* en banc to overrule it. *See Stratta v. Roe*, 961 F.3d 340, 352 (5th Cir. 2020) (rejecting that a groundwater conservation district would have immunity under *Kamani*); *Southwestern Bell Telephone Co. v. City of El Paso*, 243 F.3d 936, 939-40 (5th Cir. 2001) (declining to follow *Kamani* for water improvement district). Additionally, *Stratta* and *Southwestern Bell* did not involve the same entity, Port Houston, which the Court ruled was entitled to sovereign immunity in *Kamani*, or an admiralty claim under Federal Rule of Civil Procedure 9(h), which Diamond Services asserts here. Dkt. 1, at ¶ 11. Accordingly, *Kamani* still supports that Port Houston is entitled to sovereign immunity in a case like this one.

**B.  Under Rule 12(b)(6), Diamond Services alleged no cause of action against Port Houston and has not pled administrative exhaustion or improper agency action.**

For dismissal based on Rule 12(b)(6), the Court determines whether the plaintiff has pleaded a claim that is legally cognizable and plausible on its face, assuming the truth of the factual allegations. *Ashcroft v.*

---

driven in the scope of employment; (2) injuries caused by a condition or use of tangible personal or real property; and (3) premises defects. *Morgan v. City of Alvin*, 175 S.W.3d 408, 417-18 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

*Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). Instead, a claim is plausible "when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 1. Diamond Services alleges no plausible claims against Port Houston.

Diamond Services does not articulate what claims it brings against Port Houston. An injunction and a declaration are types of *relief*, not causes of action. *See Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552-53 (5th Cir. 2015) (collecting cases and noting that the Declaratory Judgment Act "does not create a federal cause of action."); *Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, No. CV 4:16-1250, 2016 WL 3855865, at *2-3 (S.D. Tex. July 15, 2016) ("The Declaratory Judgment Act does not enlarge the district courts' original jurisdiction; the Act is 'procedural only.' There must be an independent basis of jurisdiction for the Court to render declaratory judgment.") (citations omitted); *Denman v. Wells Fargo Bank*, No. SA-13-CV-11-XR, 2013 WL 1866580 at *2 (W.D. Tex. May 2, 2013) (collecting cases); *Barcenas v.*

*Federal Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *9 (S.D. Tex. Jan. 24, 2013) (dismissing requests for an injunction and a declaration after substantive claims were dismissed because no underlying claims remained to support them).

Diamond Services does not allege that Port Houston has done anything wrong. Instead, the complaint merely alleges that Port Houston awarded a contract to a company, Curtin Maritime, who uses a vessel that the Coast Guard Defendants determined complies with federal law. That is not a plausible or legally cognizable claim on its face.

### 2. Diamond Services does not allege a plausible, exhausted claim of improper agency action to overcome the deference to which the Coast Guard is entitled.

Diamond Services claims that the Coast Guard's issuance of the coastwide endorsement for the *DB Avalon* violates the law. Dkt. 1 at 8-9, 12-14. Diamond Services alleges it can bring such a claim under 28 U.S.C. § 1361 (the codification of the common-law writ of mandamus) and the Administrative Procedure Act (AOA), 5 U.S.C. § 702, against the Coast Guard Defendants (and apparently, in Diamond Services' view, also Port Houston). Diamond Services has not alleged a plausible, exhausted claim under either statute.

First, Diamond Services has not alleged facts demonstrating administrative exhaustion, which is necessary under both statutes. Under 28 U.S.C. §1361, a plaintiff must exhaust all other avenues for relief and the government defendant must owe him a clear, nondiscretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Likewise, a plaintiff can only challenge final agency action under the APA, unless another statute makes the action reviewable. 5 U.S.C. § 704. Diamond Services has not alleged any "final" agency action or other statute that makes the Coast Guard's decision currently reviewable. All Diamond Services alleges is that it has "sought to appeal" the Coast Guard's decision on the *DB Avalon*, "but Diamond's appeal has gone unanswered." Dkt. 1, at ¶ 41. This opaque allegation does not demonstrate exhaustion.

Second, Diamond Services has not alleged plausible facts that the Coast Guard Defendants' decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). Diamond Services only recites legal conclusions that the decision was arbitrary and capricious. *See*, *e.g.*, Dkt. 1, ¶ 62. Legal

15

conclusions are not well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678.

Diamond Services' bare-bones pleading does not allege a plausible claim that overcomes the deference owed to the Coast Guard Defendants. Because the relevant statute, 46 U.S.C. § 12101(a) does not define the term "rebuilt" for the requirement that a ship and its major components are built or rebuilt in the United States, the Coast Guard has promulgated regulations on this issue. 46 C.F.R. 67.177. *See* Dkt. 1, at 4; *Shipbuilders Council of Am. v. United States Dep't of Homeland Sec.*, 770 F. Supp. 2d 793 (E.D. Va. 2011). Those regulations, and the Coast Guard's determination under them, are entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). *See Shipbuilders Council*, 770 F. Supp. 2d at 803-94. Diamond Services has failed to allege any facts that support a plausible claim that the Coast Guard's regulations or determination here were unreasonable.

## V.    Conclusion

For these reasons, this Court should dismiss Port Houston as a defendant in this case and dismiss the entire lawsuit. The Court lacks subject matter jurisdiction over claims against Port Houston because of

state sovereign immunity and standing problems. Even if Diamond Services could somehow overcome these legal hurdles, Diamond Services has not and cannot allege a legally cognizable claim against Port Houston (or any defendants) for Diamond Services' complaints about the certification of Curtin Maritime's *DB Avalon*.

Respectfully submitted,

AHMAD, ZAVITSANOS & MENSING, P.C.

*/s/ Kelsi S. White*

Todd W. Mensing
Attorney-in-charge
TBN 24013156
Federal ID No. 302944
tmensing@azalaw.com
Sammy Ford IV
TBN 24061331
Federal ID No. 950682
sford@azalaw.com
Kelsi S. White
TBN 24098466
Federal ID No. 2995914
kwhite@azalaw.com
Michael A. Killingsworth
TBN 24110089
Federal ID No. 3372610
mkillingsworth@azalaw.com
1221 McKinney St., Ste. 2500
Houston, TX 77010
Phone: 713-655-1101
Fax: 713-655-0062

17

## Certificate of Conference

In accordance with the Court's Local Rule 7(P), I certify that on August 25, 2022 I conferred with Plaintiff's counsel regarding the issues raised in this Motion under Rule 12(b)(6), and the parties do not agree that these issues could be cured by a permissible amendment to the Complaint.

*/s/ Kelsi S. White*
Kelsi S. White

## Certificate of Service

I certify that on August 26, 2022, a copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure through CM/ECF e-filing.

*/s/ Kelsi S. White*
Kelsi S. White